# BIDDINGER *v.* COMMISSIONER OF POLICE OF THE CITY OF NEW YORK.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 426. Argued October 10, 11, 1917.—Decided November 5, 1917.

Article IV, § 2, of the Constitution intends, not to express the law of extradition as usually prevailing among independent nations, but to provide a summary executive proceeding whereby the States may promptly aid one another in bringing accused persons to trial. Its

provisions, and the statutes passed in execution of them, should be construed liberally to effectuate this purpose.

A person indicted in due form for an offense against the laws of a State, who was present in that State at the time when the offense ,is so alleged to have been committed and subsequently leaves it, becomes,. within the meaning of the Federal Constitution and laws, a fugitive from justice; and upon the making of demand, accompanied by certified papers, as required by § 5278 of the Revised Statutes, the governor of the State in which he is found must cause him to be arrested and delivered for extradition into the custody of the authorized agent of the State whose laws are alleged to have been violated.

An accused person arrested in interstate extradition proceedings, who sues out *habeas corpus* to obtain his discharge on the ground that he is not a fugitive from justice, is not entitled to introduce evidence to prove that after the date of the alleged offense he was "usually and publicly resident" within the demanding State for a time sufficient to bar the prosecution under its limitation statutes. The statute of limitations is a defense and must be asserted on the trial by the defendant in criminal cases; and this court has frequently decided that matters of defense can not be heard on *habeas corpus* to test the validity of an arrest in extradition, but must be heard and decided, at the trial, by the courts of the demanding State.

Affirmed.

THE case is stated in the opinion.

*Mr. Walter H. Pollak*, with whom *Mr. Charles H. Griffiths* and *Mr. Moses H. Grossman* were on the brief, for appellant.

*Mr. Louis Marshall* and *Mr. Robert S. Johnstone*, with whom *Mr. Edward Swann, Mr. George F. Turner* and *Mr. Isidor J. Kresel* were on the briefs, for appellee.

MR. JUSTICE CLARKE delivered the opinion of the court.

In various indictments returned in the State of Illinois on May 5th, 1916, against appellant, Guy B. Biddinger, he was charged with having committed crimes in that

State at various times between the 15th day of October, 1908, and the 2nd day of September, 1910. Each of these indictments contained the allegation required by the Illinois practice that "the said Guy B. Biddinger since the 10th day of May, 1911, and from thence hitherto, was not usually and publicly a resident within this State of Illinois."

Transmitting the papers required by the United States statutes, duly certified, the Governor of Illinois demanded of the Governor of New York the extradition of Biddinger as a fugitive from justice. The Governor of New York, after according the accused a full hearing, issued to the Commissioner of Police of the City of New York an executive warrant for his arrest and delivery to the agent authorized to receive and convey him to Illinois, there to be dealt with according to law. Upon this warrant the appellant was taken into custody.

Thereupon, on the petition of the appellant, a writ of *habeas corpus* issued from the District Court for the Southern District of New York, and the Commissioner of Police, making return thereto, gave the executive warrant as his justification for the imprisonment and detention of the accused. An elaborate traverse was filed to this return, but, upon the hearing, the court discharged the writ and remanded Biddinger to the custody of the appellee.

On appeal to this court thirty-five errors are assigned, but on argument only one is relied upon, viz: The action of the District Court in excluding evidence offered to prove that the accused had been, publicly and usually resident within the State of Illinois continuously for more than three years after the dates on which he was charged with having committed the crimes. This evidence was tendered for the claimed purpose of proving that Biddinger was not a fugitive from justice and therefore was not subject to extradition.

This claim of error requires the consideration of § 2 of Art. IV, of the Constitution, and of § 5278 of the Revised Statutes, of the United States, as well as §§ 315 and 317 of the statutes of the State of Illinois, which read as follows:

Constitution, Art. IV, § 2: "A person charged in any State with treason, felony, or other crime, who shall flee from justice, and be found in another State, shall on demand of the executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the crime."

United States Revised Statutes, § 5278: "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. . . ."

The statutes of Illinois [Hurd's Rev. Stats., 1915–16] are:

Section 315. "For other felonies. § 3. All indictments for other felonies [including the crimes charged] must be found within three years next after the commission of the crime, except as otherwise provided by law."

Section 317. "Time of absence not counted. § 5. No period during which the party charged was not usually

and publicly resident within this state shall be included in the time of limitation."

Relying upon these constitutional and statutory provisions, the argument is pressed upon our attention with much plausibility that one who continues "usually and publicly" resident within the State of Illinois for a longer period than that within which, under the laws of that State, he may be prosecuted for the crimes charged, cannot, with due regard to the meaning of the language used, be said to "flee" or "to have fled," from justice, or to be "a fugitive from justice" if he afterwards leaves that State and is found in another.

Thus is presented the question whether the order remanding the accused into custody to be conveyed to the State of Illinois for trial is in violation of the rights secured to him by the Federal Constitution and laws which we have quoted.

The provision of the Federal Constitution quoted, with the change of only two words, first appears in the Articles of Confederation of 1781, where it was used to describe and to continue in effect the practice of the New England Colonies with respect to the extradition of criminals. *Kentucky* v. *Dennison*, 24 How. 66. The language was not used to express the law of extradition as usually prevailing among independent nations but to provide a summary executive proceeding by the use of which the closely associated States of the Union could promptly aid one another in bringing to trial persons accused of crime by preventing their finding in one State an asylum against the processes of justice of another. *Lascelles* v. *Georgia*, 148 U. S. 537. Such a provision was necessary to prevent the very general requirement of the state constitutions that persons accused of crime shall be tried in the county or district in which the crime shall have been committed from becoming a shield for the guilty rather than a defense for the innocent, which it was intended

to be. Its design was and is, in effect, to eliminate, for
this purpose, the boundaries of States, so that each may
reach out and bring to speedy trial offenders against its
laws from any part of the land.

Such being the origin and purpose of these provisions
of the Constitution and statutes, they have not been
construed narrowly and technically by the courts as if
they were penal laws, but liberally to effect their impor-
tant purpose, with the result that one who leaves the
demanding State before prosecution is anticipated or
begun, or without knowledge on his part that he has vio-
lated any law, or who, having committed a crime in one
State, returns to his home in another, is nevertheless
decided to be a fugitive from justice within their meaning.
*Roberts* v. *Reilly*, 116 U. S. 80; *Appleyard* v. *Massachusetts*,
203 U. S. 222; *Kingsbury's Case*, 106 Massachusetts, 223.

Courts have been free to give this meaning to the Con-
stitution and statutes because in delivering up an accused
person to the authorities of a sister State they are not
sending him for trial to an alien jurisdiction, with laws
which our standards might condemn, but are simply
returning him to be tried, still under the protection of
the Federal Constitution but in the manner provided
by the State against the laws of which it is charged that
he has offended.

The discussion of these provisions of the Constitution
and statutes for now much more than a century has re-
sulted in the formulation of this conclusion, more than
once announced by this court (*Appleyard* v. *Massachu-
setts*, 203 U. S. 222, 227):

"A person charged by indictment or by affidavit before
a magistrate with the commission within a State of a
crime covered by its laws, and who, after the date of the
commission of such crime leaves the State—no matter
for what purpose or with what motive, nor under what
belief—becomes, from the time of such leaving, and within

the meaning of the Constitution and the laws of the
United States, a fugitive from justice, and if found in
another State must be delivered up by the Governor of
such State to the State whose laws are alleged to have
been violated, on the production of such indictment or
affidavit, certified as authentic by the Governor of the
State from which the accused departed. Such is the
command of the Supreme law of the land, which may not
be disregarded by any State."

The appellant admits: That he was in the State of Illi-
nois at the time it is charged that he committed the
crimes for which he was indicted; that the indictments
are in the form, and are certified as, required by law,
and that he was found in the State of New York. This
satisfies the requirement of the statute and by its terms
makes it the duty of the Governor of New York to cause
Biddinger to be arrested and given into the custody of
the Illinois authorities.

With these facts and this legal history before us, what
shall be said of the claim that in a *habeas corpus* hearing
the court erred in not permitting the appellant to intro-
duce evidence tending to prove that the prosecution was
barred by showing that he was "usually and publicly"
in the demanding State during the three years next after
the date at which the crime is alleged to have been com-
mitted, and that he therefore could not be a fugitive from
justice and subject to extradition?

The scope and limits of the hearing on *habeas corpus*
in such cases has not been, perhaps it should not be, de-
termined with precision. Doubt as to the jurisdiction
of the courts to review at all the executive conclusion
that the person accused is a fugitive from justice has
more than once been stated in the decisions of this court,
*Ex parte Reggel,* 114 U. S. 642; *Roberts* v. *Reilly,* 116 U. S.
80; *Appleyard* v. *Massachusetts,* 203 U. S. 222; but the
question not being necessary for the disposition of the

cases in which it is touched upon, as it is not in this, it is left undecided. This much, however, the decisions of this court make clear; that the proceeding is a summary one, to be kept within narrow bounds, not less for the protection of the liberty of the citizen than in the public interest; that when the extradition papers required by the statute are in the proper form the only evidence sanctioned by this court as admissible on such a hearing is such as tends to prove that the accused was not in the demanding State at the time the crime is alleged to have been committed; and, frequently and emphatically, that defenses cannot be entertained on such a hearing, but must be referred for investigation to the trial of the case in the courts of the demanding State.

The statute of limitations is a defense and must be asserted on the trial by the defendant in criminal cases, *United States* v. *Cook*, 17 Wall. 168; and the form of the statute in Illinois, which the appellant seeks to rely upon, makes it especially necessary that the claimed defense of it should be heard and decided by the courts of that State. *Pierce* v. *Creecy*, 210 U. S. 387; *Charlton* v. *Kelly*, 229 U. S. 447; *Drew* v. *Thaw*, 235 U. S. 432; *Reed* v. *United States*, 224 Rep. Fed. 378; *Depoilly* v. *Palmer*, 28 App. D. C. 324.

It results that the decision of the District Court must be
*Affirmed.*