306 So.2d 156 (1974)
STATE of Florida, Appellant,
v.
Carl D. COX, Appellee.
No. 74-441.
District Court of Appeal of Florida, Second District.
November 1, 1974.
Rehearing Denied December 14, 1974.
*157 Robert L. Shevin, Atty. Gen., Tallahassee, and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellant.
Allen P. Allweiss, of Allweiss and Anderson, St. Petersburg, for appellee.
GRIMES, Judge.
The State appeals from an order granting appellee's application for writ of habeas corpus. The application was verified and the State conceded the truthfulness of the facts set forth therein.
According to the application, the State of California had requested the extradition of appellee to answer charges that were filed against him on October 11, 1968. Prior to the filing of the charges, appellee had informed the pertinent California authorities of his whereabouts and discussed the merits of the case with them. He was advised that the matters were civil in nature and that, in any event, he was not the responsible party. Relying upon this advice, appellee disposed of records and documents which would have supported his defense. He says he has kept the California authorities continuously advised of his whereabouts.
Appellee stated that the charges were recently renewed by the California authorities because of pressure from his former wife. He says that she is motivated by a desire to gain custody of their minor child who is now in his custody. Appellee says that he is not a "fugitive from justice" and asserts that by waiting until October 5, 1973, to seek extradition, the State of California has violated his right to a speedy trial under the United States Constitution.
The court below found that appellee had been denied his right to a speedy trial and that his former wife was responsible for the extradition being sought by the State of California. The outcome of this appeal depends upon the scope of inquiry permitted a trial court upon a petition for habeas corpus directed to an extradition warrant.
Interstate extradition is essentially a federal matter. The federal law relating to the subject (Art. IV, § 2, U.S. Const.; 18 U.S.C. § 3182) "is paramount to state Constitution and statutes." State ex rel. Stringer v. Quigg, 91 Fla. 197, 203, 107 So. 409, 411 (1926). Nevertheless, a state may legislate concerning extradition providing its statutes are not inconsistent with the purpose of the federal law. Ennist v. Baden, 158 Fla. 141, 28 So.2d 160 (1946). Like most states, Florida has adopted the Uniform Interstate Extradition Act. See Fla. Stat., Chap. 941.
When interstate extradition is sought, the governor or executive authority of the *158 demanding state files a written demand upon the Governor of Florida. Fla. Stat. § 941.03 (1973). The Governor of Florida must examine the demand for the formal allegations required by Fla. Stat. § 941.03 (1973) to determine whether the demand should be recognized. Blasi v. State, Fla. App. 4th, 1966, 192 So.2d 307. Upon determining that the demand should be honored, the governor issues a warrant of arrest which is sufficient "if it substantially recites facts to show that an extraditable crime has been committed under the laws of the demanding state." Fla. Stat. § 941.07 (1973).
Once arrested, the judicial remedy for an accused fugitive who opposes his extradition is to seek a writ of habeas corpus. Fla. Stat. § 941.10 (1973). In this habeas corpus proceeding, the extent of inquiry is narrow. It has been said that the inquiry is limited to reviewing the governor in his determination that the jurisdictional prerequisites to the issuance of his warrant exist. Chase v. State ex rel. Burch, 93 Fla. 963, 113 So. 103 (1927). In Sullivan v. State ex rel. Pardew, Fla. 1951, 49 So.2d 800, the jurisdictional prerequisites for an extradition warrant requested by the State of New York were held to be:
"... (1) Whether petitioner was the person charged. (2) Whether petitioner was substantially charged with a crime in the State of New York. (3) Whether petitioner was a fugitive from justice, section 941.03, F.S.A., or whether he committed an act in a third state which intentionally resulted in the commission of a crime in the demanding State, 941.06. (4) Whether the indictment was certified as authentic by the Governor of the demanding State."
It is clear that evidence pertaining to the guilt or innocence of the accused person may not be considered in an extradition proceeding. Osborn v. State, 128 Fla. 488, 176 So. 55 (1936).
Neither the demand for extradition nor the governor's warrant of arrest appear in the record of the instant case. However, appellee's challenge to the extradition was based on three grounds: (1) that he is not a fugitive from justice; (2) that California has violated his right to a speedy trial; and (3) that the extradition was improperly inspired by his former wife. Therefore, it may be assumed that in all other respects the proceedings were regular and that the warrant of extradition was lawfully issued. See Trent v. McLeod, 131 Fla. 617, 179 So. 906 (1938). We shall now consider each of the appellee's grounds to see if any of them were entitled to consideration in this habeas corpus proceeding.

I.
Appellee's argument that he was not a "fugitive from justice" is premised upon his uncontroverted assertion that he did not hide himself but maintained communication with the California authorities so that they always knew of his whereabouts. This very proposition was rejected in Ex parte Coleman, 53 Tex.Cr.R. 93, 113 S.W. 17 (1908). See also People v. Ogilvie, 36 Ill.2d 566, 224 N.E.2d 247 (1967). Moreover, appellee's position is inconsistent with the rationale expressed by our nation's highest court. In Bassing v. Cady, 208 U.S. 386, 28 S.Ct. 392, 52 L.Ed. 540 (1908), the accused was indicted in New York where the initial indictment was dismissed for lack of evidence. The accused then left New York apparently with the knowledge of and without any objection by the New York authorities. Thereafter, a second indictment was returned in New York. The Supreme Court held that the fact that New York authorities knew of or did not object to the accused leaving New York did not alter his status as a "fugitive" within the meaining of the constitution and laws of the United States. The result would be the same where the authorities of the demanding state affirmatively consented to the fugitive's original departure. *159 See Application of Daily, 171 Cal. App.2d 831, 341 P.2d 364 (1959); Justice v. Lockett, 175 Kan. 25, 259 P.2d 152 (1953).
Neither does the innocent state of mind of the accused alter his status. The essence of this point was well stated in Appleyard v. Massachusetts, 203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161, (1906):
"... [T]he simple inquiry must be whether the person whose surrender is demanded is in fact a fugitive from justice, not whether he consciously fled from justice in order to avoid prosecution for the crime with which he is charged by the demanding state. A person charged by indictment or by affidavit before a magistrate with the commission within a state of a crime covered by its laws, and who, after the date of the commission of such crime, leaves the state,  no matter for what purpose or with what motive, nor under what belief,  becomes, from the time of such leaving, and within the meaning of the Constitution and the laws of the United States, a fugitive from justice, and if found in another state must be delivered up by the governor of such state to the state whose laws are alleged to have been violated, ..."
The question of whether an accused is a fugitive from justice asks nothing more than whether he was bodily present in the demanding state at the time of the offense and thereafter departed from that state. See Osborn v. State, 128 Fla. 488, 176 So. 55 (1936); State ex rel. Florio v. McCreary, 123 Fla. 9, 165 So. 904 (1936). If appellee was properly charged with committing a crime in California and he is now in Florida, he is a "fugitive from justice."

II.
The lower court held that appellee could not be extradited because the State of California had violated his right to a speedy trial. In other jurisdictions where this question has been squarely presented, it has been held that denial of the right to a speedy trial in the demanding state is not cognizable in an extradition-habeas corpus proceeding in the asylum state. In re Maldonado, 304 N.E.2d 419 (Mass. 1973); Seymour v. State, 21 Ariz. App. 12, 515 P.2d 39 (1973). Appellee does not confront these cases. Rather, appellee relies on State ex rel. Myers v. Allen, 83 Fla. 655, 92 So. 155 (1922). In Allen, it was said:
"A person who is not subject to prosecution for crime in the demanding state is not a fugitive from justice; and where there is no doubt of the applicability of the statute of limitations to the offense with which he is charged, he should be discharged on habeas corpus proceedings."
Appellee argues that the right to a speedy trial is analogous to the statute of limitations. The short answer to this contention is that even under the rationale of Allen,[1] appellee would not be entitled to discharge in this proceeding. According to Allen, the subject of an extradition proceeding should be discharged only where there is no question about the applicability of the statute of limitations. As it developed, *160 the Allen court was in doubt whether the statute of limitations was applicable and left the construction of the statute to the demanding state. Similarly, we cannot say in view of the summary nature of this proceeding that appellee's federal right to a speedy trial has been denied. Determination of such a question under the U.S. Constitution involves the use of a balancing test on an ad hoc basis and a consideration of at least four different factors, to wit: length of delay; reason for the delay; whether defendant asserted his right; and prejudice to the defendant. See Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Consideration of these factors requires the production of evidence that is beyond the scope of an extradition proceeding and more suitable to determination in the court of the demanding state. It must be assumed that one who is subject to extradition will receive all of his constitutional safeguards upon his return to the demanding state.

III.
Finally, we observe that the motives which inspired the prosecution or the motives of the prosecuting witness cannot be considered in a habeas corpus proceeding to challenge extradition. Passalaqua v. Biehler, 46 N.J. Super. 63, 133 A.2d 667 (1957); Foley v. State, 32 N.J. Super. 154, 108 A.2d 24 (1954); People v. Nenna, 51 Misc.2d 343, 273 N.Y.S.2d 253 (Sup.Ct. 1966). If, as the lower court found, appellee's former wife instigated this proceeding with an ulterior motive, appellee may show this, for what it is worth, in the courts of the demanding state. Again, the question is beyond the scope of inquiry in this proceeding.
It follows that we must hold that the considerations which prompted the trial court to grant relief were legally irrelevant. While we are not unmindful of the equities favoring the appellee, these are matters which may be more appropriately tendered to the governor. See Fla. Stat. § 941.04 (1973); Ex parte Kentucky v. Dennison, 65 U.S. (24 How.) 66, 16 L.Ed. 717 (1860); State v. Booth, 134 Mont. 235, 328 P.2d 1104 (1958).
Reversed.
HOBSON, A.C.J., and BOARDMAN, J., concur.
NOTES
[1] The continuing viability of the Allen position concerning the statute of limitations is subject to question. The overwhelming weight of authority holds that the defense of statute of limitations is not a proper subject for consideration in the context of resisting extradition by way of habeas corpus. See United States ex rel. Tyler v. Henderson, 453 F.2d 790 (5th Cir.1971); Stanley v. Beasley, 243 Ind. 384, 185 N.E.2d 731 (1962); Waggoner v. Feeney, 220 Ind. 543, 44 N.E.2d 499 (1942); Annot. 77 A.L.R. 902. In Biddinger v. Commissioner of Police, 245 U.S. 128, 38 S.Ct. 41, 62 L.Ed. 193 (1917), the Supreme Court held that the statute of limitations defense must be asserted at the trial and not in a habeas corpus proceeding opposing extradition. While Biddinger predated Allen, the Florida Supreme Court did not mention this decision.